**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARA MARENTETTE, MATTHEW O'NEIL NIGHSWANDER, and ELLEN STEINLIEN, on behalf of themselves and all others similarly situated, | Case No. 15-CV-2837-PKC-RLM **FIRST AMENDED CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| ABBOTT LABORATORIES, INC., | |
| Defendant. | |

{00271331 }

Plaintiffs Sara Marentette, Matthew O'Neil Nighswander, and Ellen Steinlein ("Plaintiffs"), on behalf of themselves and all others similarly situated, and by and through their undersigned counsel, allege the following based upon their own personal knowledge and the investigation of their counsel:

## NATURE OF THE ACTION

1.      This is a proposed class action against Abbott Laboratories, Inc. and Abbott Nutrition (collectively, "Abbott" or "Defendant") for false and misleading misrepresentations on its private-label Similac® Advance® Organic Infant Formulas ("'Organic' Infant Formula"). *See* product label and ingredients attached as Exhibit 1.

2.      Abbott's so-called "Organic" Infant Formula has a spectacular array and substantial amount of ingredients prohibited in organic foods.  In fact, of the 49 ingredients in the Infant Formula, ***more than half*** (26 ingredients) are not allowed in organic foods.  Many of those 26 ingredients are irradiated substances, synthetic compounds, or produced from hazardous substances.

3.      For example, Abbott's Similac Advance "Organic" Infant Formula contains sodium selenate (an extremely hazardous and toxic compound), taurine (a synthetic additive that has been associated with negative brain and nervous system effects in animals), cholecalciferol (an irradiated substance), calcium pantothenate (a synthetic compound produced from formaldehyde), and cyanocobalamin (a synthetic compound that the body converts to cyanide).

4.      Additionally, at least one ingredient in these infant formulas is produced using genetically engineered materials – a practice forbidden in organic foods.

5.      Abbott deceptively and misleadingly claimed that the infant formula is "organic" and charged a premium price for the "Organic" Infant Formula.  Abbott was also motivated to

mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

6.      Consumers lack the ability to test or independently  ascertain the accuracy of a food label, especially at the point of sale.  Reasonable consumers must and do rely on the food company to report honestly whether a product is organic.

7.      Food companies intend for consumers to rely upon its representations, and reasonable consumers do in fact so rely.  The food company's representations are the only source of information consumers can use to make decisions concerning whether to buy and ingest packaged foods.

8.      As a result of its false and misleading labeling, Abbott was able to sell its "Organic" Infant Formula to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

9.      Abbott's false and misleading representations and omissions violate states laws as detailed more fully below, including New York General Business Law § 349, California's Organic Products Act, California's Unfair Competition Law, California's Consumers Legal Remedies Act, and common law.

10.     By deceiving consumers about the nature, quality, and/or ingredients of the "Organic" Infant Formula as detailed herein, Abbott was able to command a premium price for the "Organic" Infant Formula.  Abbott was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

11.     Plaintiffs bring this action to stop Abbott's deceptive and misleading practices.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Jurisdiction under CAFA is met because: (1) the proposed number of putative class members exceeds 100; (2) at least one plaintiff and one defendant are citizens of different states; and (3) the amount in controversy, including but not limited to the aggregate amount of relief sought by absent class members, exclusive of interest and costs, exceeds $5 million.

13.     This Court has personal jurisdiction over the parties in this case. Plaintiff Steinlein is a citizen of California, and by filing this Complaint, consents to this court having personal jurisdiction over her. Plaintiffs Sara Marentette and Matthew O'Neil Nighswander are citizens of New York and by filing this Complaint, consent to this Court having personal jurisdiction over them. Defendant Abbot Laboratories, Inc. is a Delaware corporation with its principal place of business in North Chicago, Illinois. Abbott Laboratories, Inc. conducts business as Abbott Nutrition. This division makes Similac Advance Organic products and is headquartered in Columbus, Ohio. Abbott Laboratories, Inc. has sufficient minimal contacts with New York to establish personal jurisdiction of this Court over it, or otherwise purposefully avails itself of the laws of this State through its marketing and sales of its "Organic" Infant Formula in this State, which is sufficient to establish that it is subject to the personal jurisdiction of this Court.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because this Court has personal jurisdiction over Defendant.

{00271331 }

First Amended Class Action Complaint

4

15.     No other forum would be more convenient for the parties and witnesses to litigate this action.

**PARTIES**

16.     Plaintiff Ellen Steinlein is a mother residing in Dixon, California, and she has no intention of changing her residence.  From August 2012 through February 2013, Plaintiff Steinlein purchased Abbott's Similac Advance "Organic" Infant Formula approximately once per month.  Plaintiff Steinlein made those purchases at a Wal-Mart store located at 235 E. Dorset Drive in Dixon, California, and at a Safeway store located at 1235 Stratford Avenue in Dixon, California.  In deciding to make these purchases, Plaintiff Steinlein saw and relied upon the representation that the "Organic" Infant Formula was "ORGANIC."  She reasonably believed the "Organic" Infant Formula was organic, as labeled, and the "ORGANIC" representation was a significant reason for her purchase.  She also relied upon Abbott's representations that its "Organic" Infant Formula does not contain preservatives.

17.     Plaintiffs Sara Marentette and Matthew O'Neil Nighswander are parents to four young children, reside in Brooklyn, New York, and have no intention of changing their residence.  During the class period, Plaintiffs purchased Abbott's Similac Advance "Organic" Infant Formula in both liquid and powder form at retail prices.  Plaintiff Nighswander purchased Abbott's Similac Advance "Organic" Infant Formula at the Clinton Apothecary in Brooklyn, New York, in March 2014.  More recently, Plaintiff Marentette purchased Similac Advance "Organic" Infant Formula (liquid) at a Wal-Mart store located in Tilton, New Hampshire on July 6, 2014, and Similac Advance "Organic" Infant Formula (powder) at a Walgreens store located at 142 Loudon Road in Concord, New Hampshire on August 3, 2014.  In deciding to make these purchases, Plaintiffs Marentette and Nighswander saw and relied upon the representation that the

"Organic" Infant Formula was "ORGANIC."  They reasonably believed the "Organic" Infant

Formula was organic, as labeled, and the "ORGANIC" representation was a significant reason

for their purchase.  They also relied upon Abbott's representations that the "Organic" Infant

Formula does not contain preservatives.

18.     However, contrary to Abbott's representation that the "Organic" Infant Formula

was "organic," the "Organic" Infant Formula contained ingredients not permitted in organic

products, including sodium selenate, taurine, cholecalciferol, l-carnitine, choline bitartrate,

adenosine-5'-monophosphate, cytidine-5'-monophosphate, disodium guanosine-5'-

monophosphate, disodium uridine-5'-monophosphate, calcium pantothenate, cyanocobalamin,

ascorbyl palmitate, choline chloride, m-inositol, docosahexaenoic acid single cell oil, arachidonic

acid single cell oil, biotin, lutein, and beta-carotene.  *See* Ex. 1.

19.     Had Plaintiffs known at the time that the "Organic" Infant Formula they

purchased was not organic as promised, they would not have purchased the "Organic" Infant

Formula.

20.     If Abbott's products were reformulated such that its representations were truthful,

Plaintiffs would consider purchasing Abbott's products, including the "Organic" Infant Formula.

21.     Defendant Abbott Laboratories, Inc. is a Delaware Corporation, with its principal

place of business located at 100 Abbott Park Road., North Chicago, IL 60064-3502.  Abbott

Laboratories, Inc. is the owner of the "Similac Advance" brand.  Abbott Laboratories, Inc.,

directly and through its agents, has substantial contacts with and receives benefits and income

from and through the States of New York and California.

22.     Defendant Abbott Laboratories, Inc. does business as Abbott Nutrition, the

division of Abbott Laboratories Inc. that makes Similac Advance Organic products.  Abbott

Nutrition is headquartered at 3300 Stelzer Road, Columbus, Ohio 43219-3034. Abbott Nutrition, directly and through its agents, has substantial contacts with and receives benefits and income from and through the States of New York and California.

## SUBSTANTIVE ALLEGATIONS

### ABBOTT HOLDS ITSELF OUT AS AN ORGANIC PRODUCT MANUFACTURER

23.     American consumers increasingly and consciously seek out organic foods. Consumers value the "organic" label for a myriad of reasons, including perceived benefits of avoiding disease, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.

24.     Hoping to capture this growing market, Abbott introduced an "organic" version of its Similac line of infant formulas. Abbott labels and advertises the product as "organic" and makes other similar representations detailed fully below.

### ABBOTT FALSELY REPRESENTS THAT ITS "SIMILAC ADVANCE ORGANIC" INFANT FORMULAS ARE ORGANIC

25.     Abbott made false, misleading, and deceptive representations that its "Organic" Infant Formula is organic by prominently labeling the product packages as "ORGANIC." In fact, the "Organic" Infant Formula products are not organic because they contain ingredients that federal law does not permit in organic foods. *See* Ex. 1.

26.     Abbott's "Organic" Infant Formula is thus not "organic" under federal law, and labeling it as such is misleading and deceptive under state law.

27.     Examples of such ingredients found in the "Organic" Infant Formula that are not permitted in organic foods include:

a.      ***Sodium selenate***, is federally regulated as an "extremely hazardous substance" and toxic pollutant.  40 C.F.R. § 355; 40 C.F.R. § 401.15.  Sodium selanate is extremely hazardous in case of ingestion, and is toxic to the blood, kidneys, lungs, and liver. MSDS sodium selenate.  It is permitted to be used in animal feeds, but not permitted to be used in foods intended for human consumption. It is produced by dissolving metallic selenium in nitric acid and reacting the product with an alkali metal hydroxide, alkali metal carbonate, and/or some other metal oxide hydroxide, forming an alkali metal selenite, which is then oxidized to form selenate. U.S. Patent No. 4,605,544.  Sodium selenate is not permitted in organic products. 7 C.F.R. § 205.605.

b.      ***Adenosine-5'-Monophosphate ("AMP"); cytidine-5'-monophosphate ("CMP"); disodium guanosine-5'-monophosphate ("GMP"); disodium uridine-5'-monophosphate ("UMP"))***, which are compounds known as ***nucleotides***, the base molecules of ribonucleic acid (RNA) and deoxyribonucleic acid (DNA).  Upon information and belief, they are synthetically extracted from the RNA in yeast by enzymatic hydrolysis and synthetic filtration, using hydrochloric acid.  The Food and Drug Administration ("FDA") has never affirmed any of the nucleotides as generally recognized as safe ("GRAS") as a food additive. One ingredient supplier determined that one of the nucleotides, AMP, is generally recognized as safe as a food ingredient, and it has been used as an artificial flavor enhancer due to its strong umami-like flavor.  FDA Agency Response Letter GRAS Notice No. GRN 000144.  No supplier has filed a similar determination that any of the other four nucleotides are generally recognized as safe as a food ingredient.  These nucleotides are not permitted in organic foods.  7 C.F.R. §§ 205.105(c), 205.605.

c.     ***Taurine***, a.k.a. 1 2-aminoethanesulfonic acid, which animal studies show to have negative brain and nervous system effects, metabolic effects, and cardiovascular effects, even at very low doses.  Commercially available taurine is synthetically produced by reacting ethylene oxide with aqueous sodium bisulfate, reacting aziridine with sulfurous acid, or reacting monoethanolamine, sulfuric acid, and sodium sulfite.  The FDA has not affirmed taurine as safe in foods or infant formulas, and taurine is not permitted to be added to foods labeled as "organic."  7 C.F.R. §§ 205.105(c), 205.605.  In fact, the National Organic Standards Board specifically rejected applications to permit taurine to be added to organic foods.

d.     ***Docosahexaenoic acid single cell oil***, a.k.a. "DHASCO," which is added to Abbott's "Organic" Infant Formula in the form of crypthecodinium cohnii oil.  Martek Biosciences Corporation produces crypthecodinium cohnii oil as a by-product from the marine dinoflagellate *C. cohnii*, a nonagricultural microorganism. 7 C.F.R. §§ 205.2; 205.605.  Such by-products from nonagricultural microorganisms (like DHASCO) are not permitted in organic foods. 7 C.F.R. §§ 205.105(c), 205.605.  Martek Biosciences Corporation uses hexane (a volatile synthetic solvent and toxic pollutant) to extract DHASCO from the unicellular microalgae, and it adds ascorbyl palmitate (a synthetic substance) to the final byproduct for oxidative stability.  As much as 77% of the final DHASCO contains other triglycerides, including myristic acid (13-20%), palmitic acid (12-25%), oleic acid (10-25%), lauric acid (2-6%), and capric acid (1%).  None of these compounds is permitted in organic foods, 7 C.F.R. § 205.605, and DHASCO is not permitted in organic foods, 7 C.F.R. §§ 205.105(c), 205.270; 205.605.

e.     ***Arachidonic acid single cell oil***, a.k.a. "ARASCO," which is added to Abbott's "Organic" Infant Formula in the form of mortierella alpine oil.  Mortierella alpine oil is a by-product from *M. alpina*, a soil fungus, and therefore not permitted in organic foods.  7

C.F.R. §§ 205.2, 205.605. Like DHASCO, ARASCO is produced using hexane extraction and ascorbyl palmitate to preserve oxidative stability. The product is therefore not permitted in organic foods. 7 C.F.R. §§ 205.105, 205.270. As much as 64% of the final ARASCO ingredient contains other fatty acids, including oleic acid (~16–23%), palmitic acid (~7–10%), stearic acid (~7–10%), linoleic acid (~6–8%), gamma-linoleic acid (~3%), dihomo-gamma-linoleic acid (~1–3%), behenic acid (~2%), and a number of other fatty acids at levels less than one percent. None of these compounds are permitted in organic foods, 7 C.F.R. § 205.605, and ARASCO are not permitted in organic foods, 7 C.F.R. §§ 205.105(c), 205.605.

       f.    ***Ascorbyl palmitate***, is a chemical preservative, 21 C.F.R. § 182.3149, prepared by condensing palmitoyl chloride and ascorbic acid in the presence of a dehydrochlorinating agent such as pyridine. It can also be produced by the esterification of ascorbic acid with sulfuric acid and palmitic acid. Other patented processes use dimethylformamide, dimethyl sulfoxide, or hydrogen fluoride instead of sulfuric acid. Ascorbyl palmitate is not permitted in organic foods. 7 C.F.R. §§ 205.105(c), 205.605.

       g.    ***Calcium pantothenate***, which is synthetically prepared from isobutyraldehyde, a synthetic flavoring substance and toxic chemical, 21 C.F.R. § 184.1212; 40 C.F.R. § 372.65, and formaldehyde, a hazardous substance, 40 C.F.R. § 116.4, via 1,1-dimethyl-2-hydroxy-propionaldehyde and pantolactone. 21 C.F.R. § 184.1212. It is not allowed in organic foods. 7 C.F.R. §§ 205.105(c), 205.605. Calcium pantothenate ($C_{18}H_{32}CaN_2O_{10}$),

represented is not the same substance as vitamin B5 ($C_9H_{17}NO_5$), represented graphically as follows:



       h.    *Choline chloride*, which is a synthetic substance produced by reacting trimethylamine and concentrated hydrochloric acid (both hazardous substances) and treating the resulting product with ethylene oxide under pressure.  Choline chloride ($C_5H_{14}ClNO$) is not the



same substance as the nutrient choline ($C_5H_{14}NO$).  While choline chloride is permitted in soy-based infant formula, it is prohibited in other foods labeled as organic, including Abbott's "Organic" Infant Formula, which is a milk-based product.  7 C.F.R. §§ 205.105(c), 205.605.

       i.    *Choline bitartrate*, which is a synthetic substance produced by the reaction of trimethylamine with ethylene oxide followed by treatment with tartaric acid. Trimethylamine and tartaric acid are both hazardous substances.  40 C.F.R. § 116.4.  Choline bitartrate is not the same substance as choline, an ingredient permitted in organic non-milk-based infant formulas.  Choline bitartrate ($C_9H_{19}NO_7$) is a synthetic variation of choline ($C_5H_{14}NO$), a nutrient naturally found in grains, nuts, and beans. It is not allowed in organic foods.  7 C.F.R. §§ 205.105(c), 205.605.

j.      ***Cyanocobalamin***, which is a synthetic compound produced commercially from cultures of *Streptomyces griseus*.  21 C.F.R. § 184.1945.  Cyanocobalamin ($C_{63}H_{88}CoN_{14}O_{14}P$) is chemically and molecularly distinct from natural vitamin B12 (cobalamin, $C_{62}H_{88}CoN_{13}O_{14}P$), found in animal foods such as fish, liver, poultry, eggs, and milk products. Cyanocobalamin does not give the human body the full range of vitamin activity found in natural vitamin B12.  Unlike natural vitamin B12, the body converts cyanocobalamin to methylcobalamin and adenosylcobalamin, leaving the body to enzymatically remove the resulting cyanide, potentially harmful to those who are deficient in this ability.  Cyanocobalamin is not allowed in organic foods.  7 C.F.R. §§ 205.105(c), 205.605.

k.      ***L-carnitine***, is usually synthesized using epichlorhydrine or trimethylamine, and racemate separation by fractionated crystallization or other methods.  L-carnitine can also be obtained from industrially produced D-mannitol, or produced using commercially available biosynthetic methods via microorganisms (e.g., *Escherichia coli, Proteus mirabilis*) cultivated in a bioreactor with crotonobetaine, crotonobetaine salts, or its derivatives. L-Carnitine is not permitted in organic foods.  7 C.F.R. §§ 205.105(c), 205.605.

l.      ***Cholecalciferol***, is a synthetic compound.[1]  Its production requires ultraviolet irradiation of ergosterol isolated from yeast and related fungi and purified by crystallization, or ultraviolet irradiation of 7-dehydrocholesterol produced from cholesterol.  21 C.F.R. § 184.1950(a).  Cholecalciferol is not allowed in organic foods.  7 C.F.R. § 205.105(f).

m.      ***Lutein***, is an antioxidant found in egg yolks, yellow flower petals, algae, and vegetables.  It is commercially produced from marigold petals through solvent extraction and

---

[1] Cholecalciferol can be produced from fish liver oils, but Abbott's labels do not indicate that the ingredient was derived from seafood, as would be required by law.

saponification to cleave the fatty acids from the xanthophyll esters, yielding free lutein. According to the USDA, the resulting lutein product is synthetic.  It is not permitted in organic foods.  7 C.F.R. § 205.605.

n.     ***M-Inositol***, which according to the USDA, cannot be produced non-synthetically on a commercial scale using available methods.  Instead, inositol is synthetically produced by extracting phytic acid (inositol-hexaphosphate) from plants such as corn or rice by soaking in a dilute acid solution, such as hydrochloric acid or sulfuric acid, creating phytin (inositol-hexaphosphate salt).  The phytin is synthetically converted to inositol by hydrolysis with a strong sulfuric acid solution, and then purified with a reagent like barium to remove the sulfuric acid, phosphoric acid, and calcium or mangesium sulfate.  Alternatively, it can be prepared synthetically from phytin using ammonium salts such as ammonium sulfate, ammonium chloride, ammonium nitrate, ammonium acetate, or ammonium phosphate for hydrolysis.  M-Inositol is prohibited from organic foods, and milk-based infant formulas, such as Abbott's Similac Advance "Organic" Infant Formula.  7 C.F.R. §§ 205.105(c), 205.605; 21 C.F.R. § 107.100.

o.     ***Beta-carotene***, is a synthetic food coloring agent, additive number E160a; 21 C.F.R. §§ 184.1245(a), 101.22(a)(4) ("artificial color" or "artificial coloring").  Beta-carotene is isolated from natural sources using column chromatography and separation by non-polar solvents, such as hexane (a synthetic neurotoxin and environmental hazard).  Beta-carotene is not the same substance as vitamin A.  Vitamin A (retinol) is $C_{20}H_{30}O$, represented graphically as follows:

Beta-carotene, by contrast, is $C_{40}H_{56}$, represented graphically as follows:



Beta-carotene operates on the human body differently than natural vitamin A.  For example, some studies indicate that beta-carotene supplementation increases the probability of lung cancer in cigarette smokers.  Beta-carotene is not allowed in organic foods.  7 C.F.R. §§ 205.105(c), 205.605.

{00271331 }

p.      ***Biotin***, which is synthetically produced from fumaric acid, a hazardous substance.  Biotin is not permitted in milk-based organic infant formulas.  7 C.F.R. § 205.605; 21 C.F.R. § 107.100.

28.      Further inducing consumers to rely on the deceptive representation that its Similac Advance "Organic" Infant Formula is "ORGANIC," Abbott did not label other Similac Infant Formulas as "organic," leading consumers to believe that Abbott carefully studied each of its products' ingredients to ensure that the "ORGANIC" claim is truly organic as to the "Organic" Infant Formula.

## THE REPRESENTATIONS ARE FALSE, DECEPTIVE, AND MISLEADING

29.      Abbott's conduct deceived and/or was likely to deceive the public.  Consumers were deceived into believing that the listed ingredients are permitted in organic foods.

30.      Consumers would not know the true nature of the ingredients merely by reading the ingredient label.  Discovery of the true nature of the ingredients requires investigation beyond the grocery store, and knowledge of food chemistry and federal regulations beyond that of the average reasonable consumer.

## ABBOTT'S DECEPTIVE AND MISLEADING OMISSIONS

31.      Abbott deceptively and misleadingly conceals material facts about its Similac Advance "Organic" Infant Formula, including:

a.      the true nature of the its ingredients;

b.      that the product is not "organic;"

c.      that the product contains preservatives, artificial substances, and synthetic substances;

d.      that the substances are synthetically manufactured, or are produced or processed using synthetic ingredients, artificial ingredients, toxins, carcinogens, pollutants, genetically modified organisms, and/or hazardous substances.

32.      To this day Abbott continues to conceal and suppress the true nature, identity, source, and method of production of some of the ingredients in its "Organic" Infant Formula.

## LOCATION OF THE MISREPRESENTATIONS

33.      Abbott prominently makes the above false, deceptive, and misleading misrepresentations and omissions on the package of its "Organic" Infant Formula. *See* Ex. 1.

34.      The misrepresentations and omissions were uniform and were communicated to Plaintiffs and to each member of the Class at every point of purchase and consumption.

## ABBOTT KNEW THE REPRESENTATIONS WERE FALSE

35.      Abbott knew what representations it made regarding its "Organic" Infant Formula. Abbott also knew what ingredients were added to each product, as (presumably) all product ingredients are listed on the product packages.

36.      Abbott is governed by and knows the federal regulations that control the labeling of its "Organic" Infant Formula, and thus was aware that many of the ingredients are not permitted in organic foods.

37.      As early as September 2011, the USDA declared that many of the ingredients contained  in Abbott's "Organic" Infant Formulas were not to be permitted in organic products.

38.      Accordingly Abbott knew all the relevant facts and thus knew that its "Organic" Infant Formula is falsely and deceptively labeled.

{00271331 }

## ABBOTT INTENDED FOR CONSUMERS TO RELY ON ITS

## MISREPRESENTATIONS

39.     Abbott made the false, deceptive, and misleading representations and omissions intending for Plaintiffs and the Class members to rely upon these representations and omissions in purchasing and ingesting Abbott's "Organic" Infant Formula.

40.     Abbott knew, and independent surveys confirm, that consumers want and will pay a premium for organic products.

41.     In making the false, misleading, and deceptive representations and omissions, Abbott intended that consumers would buy and pay a premium for organic products, furthering Abbott's private interest of increasing sales of its products and decreasing sales of the organic products that are truthfully marketed by Abbott's competitors.

## CONSUMERS REASONABLY RELIED ON ABBOTT'S MISREPRESENTATIONS

42.     Consumers frequently rely on food label representations and information in making purchase decisions.

43.     When Plaintiffs and the Class members purchased Abbott's "Organic" Infant Formula, Plaintiffs and the Class members saw the deceptive representations and did not receive disclosure of the facts concealed, as detailed above.

44.     Plaintiffs and the Class members were among the intended recipients of Abbott's deceptive representations and omissions.

45.     Plaintiffs and the Class members reasonably relied to their detriment on Abbott's misleading representations and omissions.

46.     Abbott's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the Class members, reasonable consumers, and the general public.

47.     Abbott made the deceptive representations and omissions with the intent to induce Plaintiffs and the Class members to purchase its "Organic" Infant Formula.  Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed.

48.     Abbott's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.  Thus, Plaintiffs' and the Class members' reliance upon such representations and omissions may be presumed as a matter of law.  The materiality of those representations and omissions also establishes causation between Abbott's conduct and the injuries sustained by Plaintiffs and the Class members.

**ABBOTT'S WRONGFUL CONDUCT CAUSED PLAINTIFFS' INJURY**

49.     As an immediate, direct, and proximate result of Abbott's false, misleading, and deceptive representations and omissions, Abbott injured Plaintiffs and the Class members in that they:

       a.     paid a sum of money for a product that was not as represented;

       b.     paid a premium price for a product that was not as represented;

       c.     were deprived the benefit of the bargain because the product they purchased was different from what Abbott warranted;

       d.     were deprived the benefit of the bargain because the product they purchased had less value than what was represented by Abbott;

    e.  did not receive a product that measured up to their expectations as created by Abbott;

    f.  caused their children to ingest a substance that was other than what was represented by Abbott;

    g.  caused their children to ingest a substance that Plaintiffs and the members of the Class did not expect or consent to;

    h.  without their knowing consent, caused their children to ingest a substance that is generally harmful to their health or their children's health;

    i.  caused their children to ingest a substance that was of a lower quality than what Abbott promised;

    j.  were denied the benefit of knowing what their children consumed;

    k.  were denied the benefit of supporting an industry that sells organic foods and contributes to environmental sustainability; and

    l.  were denied the benefit of the beneficial properties of the organic foods promised.

  50.  Had Abbott not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been injured.  Accordingly, Plaintiffs and the Class members have suffered "injury in fact" as a result of Abbott's wrongful conduct.

  51.  Plaintiffs and the Class members all paid money for Abbott's "Organic" Infant Formula.  However, Plaintiffs and the Class members did not obtain the full value of the advertised product due to Abbott's misrepresentations and omissions.  Plaintiffs and the Class members purchased the "Organic" Infant Formula when they otherwise would not have, or

{00271331 }

purchased more of, or paid more for, the "Organic" Infant Formula than they would have had

they known the truth about the product.  Accordingly, Plaintiffs and the Class members have

suffered "injury in fact" and lost money or property as a result of Abbott's wrongful conduct.

## ABBOTT BENEFITTED FROM ITS MISLEADING AND

## DECEPTIVE REPRESENTATIONS AND OMISSIONS

52.     As the intended, direct, and proximate result of Abbott's false, misleading, and

deceptive representations and omissions, Abbott has been unjustly enriched through more sales

of its "Organic" Infant Formula and higher profits at the expense of Plaintiffs and the Class

members.  As a direct and proximate result of its deception, Abbott also unfairly obtained other

benefits, including the higher value associated with an organic foods brand and the resulting

higher stock value.

## <u>CLASS ALLEGATIONS</u>

53.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> All persons in the United States who purchased Abbott's "Organic" Infant
> Formula (as defined herein) from April 29, 2007 to the date of certification of the
> Class (the "Class Period").

54.     Additionally, Plaintiffs bring this action as a class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure on behalf of the following sub-class (the "New York Sub-

Class"): All New York residents who purchased Abbott's "Organic" Infant Formula (as defined

herein) in New York during the Class Period.

55.     Additionally, Plaintiffs bring this action as a class action pursuant to Rule 23 of

the Federal Rules of Civil Procedure on behalf of the follow sub-class (the "California Sub-

Class"): All California residents who purchased Abbott's "Organic" Infant Formula (as defined herein) in California during the Class Period.

56.    Excluded from the Class and the Sub-Classes are (1) Defendant; (2) any entity in which any Defendant has a controlling interest; (3) the legal representatives, officers, directors, assigns, and successors of any Defendant; (4) the Judge to whom this case is assigned and any member of the Judge's immediate family; and (6) all claims for personal injury, wrongful death, or any incidental damages over and above those sought herein, except as authorized by law.

57.    Plaintiffs bring the Class and the Sub-Classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

58.    At this time, Plaintiffs do not know the exact number of members of the Class or the Sub-Classes.  However, given the nature of the claims and the number of retail stores selling the Abbott's "Organic" Infant Formula, Plaintiffs believe that there are hundreds of thousands of members and that joinder of all of them is impracticable.

59.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class and the Sub-Classes that predominate over questions that may affect individual members include:

a.    Whether Abbott labeled, marketed, advertised, and/or sold its "Organic" Infant Formula to Plaintiffs and the other members of the Class and the Sub-Classes using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature, quality, and/or ingredients of Abbott's "Organic" Infant Formula;

b.    Whether Abbott omitted and/or misrepresented material facts in connection with the sales of its "Organic" Infant Formula;

c.      Whether Abbott participated in and pursued the common course of conduct complained of herein; and

d.      Whether Abbott's labeling, marketing, advertising, and/or selling its "Organic" Infant Formula constitutes an unfair or deceptive consumer sales practice.

60.     Plaintiffs' claims are typical of those of the Class and the Sub-Classes because Plaintiffs, like all members of the Class and the Sub-Classes, purchased Abbott's "Organic" Infant Formula, relying on Abbott's false and misleading representations in a typical consumer setting at Abbott's price and sustained damages from Abbott's wrongful conduct.

61.     Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Classes because Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class and the Sub-Classes they seek to represent.  Plaintiffs feel that they have been deceived, wish to obtain redress of the wrong, and want Abbott stopped from perpetrating similar wrongs on others.  Plaintiffs are adequate representatives of the Class and the Sub-Classes also because their interests do not conflict with the interests of the Class members and Sub-Classes members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, who led the investigation uncovering Abbott's wrongs, who were the first to publicly uncover Abbott's wrongs, who have no interests adverse to the members of the Class members or the Sub-Classes, and who can and will vigorously prosecute this litigation.

62.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Specifically, no member of the Class or the Sub-Classes has a substantial interest in individually controlling the prosecution of a separate action. The damages suffered by each individual Class member likely will be relatively small, especially given the

{00271331 }

burden and expense of individual prosecution of the complex litigation necessitated by Abbott's conduct. Thus, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them.

63.     Upon information and belief, there are no pending lawsuits concerning this controversy.  Concentration of the litigation concerning this matter in this Court is desirable; the Class is of a moderate size, and the difficulties likely to be encountered in the management of a class action are not great.  The resolution of the claims of all Class members and Sub-Classes members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation.

64.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Abbott has acted or refused to act on grounds generally applicable to the Class and the Sub-Classes, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole and the Sub-Classes as a whole.

65.     The prosecution of separate actions by members of the Class or the Sub-Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Abbott.

66.     Abbott's conduct is generally applicable to the Class as a whole and the Sub-Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole and the Sub-Classes as a whole.  As such, Abbott's systematic policies and practices make declaratory relief with respect to the Class as a whole and the Sub-Classes as a whole appropriate.

{00271331 }

67. The Class and the Sub-Classes are specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action. Because Abbott is both the manufacturer of its private label products and its own retailer, notice to the Class and the Sub-Classes can be made through various means, such as in-store leaflets, website advertisements, notices on the labels of the packages, and/or direct notice to those consumers for which Abbott knows the e-mail or physical mailing address.

## CAUSES OF ACTION

### FIRST CLAIM

#### (Breach of Express Warranty)

#### Brought on Behalf of Plaintiffs and the Putative Class

68. Plaintiffs incorporate by reference the allegations set forth above.

69. Plaintiffs bring this cause of action on Plaintiffs' behalf and on behalf of the nationwide Class and the New York and California Sub-Classes, pursuant to New York law for the New York Sub-Class, and pursuant to California law for the California Sub-Class.

70. Defendant expressly warranted to Plaintiffs and members of the Class on the package of Abbott's "Organic" Infant Formula those representations as listed above.

71. These express warranties appear on each and every package of Abbott's "Organic" Infant Formula.  These affirmations of fact or promises by Defendant relate to the goods and became part of the basis of the bargain.

72. Plaintiffs and members of the Class purchased Abbott's "Organic" Infant Formula, believing them to conform to the express warranties.

73. Defendant breached the express warranties contained on the package of Abbott's "Organic" Infant Formula.  This breach resulted in damages to Plaintiffs and other members of

the Class and the Sub-Classes, who bought the "Organic" Infant Formula, but did not receive the goods warranted.

74.     As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and the Class members did not receive goods as warranted.  Plaintiffs and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial and provided Defendant notice.  Among other things, Plaintiffs and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiffs and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Defendant charged for the products.

75.     THEREFORE, Plaintiffs pray for relief as set forth below.

### SECOND CLAIM

**(Violation of the New York General Business Law § 349)**

76.     Plaintiffs incorporate by reference the allegations set forth above.

77.     This cause of action is brought pursuant to New York General Business Law § 349 by Plaintiffs Nighswander and Marentette on Plaintiffs' behalf and on behalf of the nationwide Class and the New York Sub-Class.

78.     Such acts of Abbott, as described above, and each of them constitute unlawful, deceptive, and fraudulent business acts and practices.

79.     Defendant has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendant's violation of § 349, Plaintiffs and other members of the Class and New York Sub-Class have suffered damages in an amount to be determined at trial.

{00271331 }

80.     Pursuant to New York General Business Law § 349, Plaintiffs seek an order of this Court that includes, but is not limited to, an order enjoining Abbott from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

81.     Plaintiffs and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

82.     The unfair and deceptive acts and practices of Abbott, as described above, present a serious threat to Plaintiffs and the other members of the Class and New York Sub-Class.

83.     THEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CLAIM

### (Violation of the California Unfair Competition Law,

### Cal. Bus. & Prof. Code § 17200 et seq.)

### Brought on Behalf of the California Sub-Class

84.     Plaintiffs incorporate by reference the allegations set forth above.

85.     Defendant has engaged and continues to engage in unlawful, unfair, or fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17200, causing injury to Plaintiff Steinlein and the California Sub-Class.

86.     By committing the acts and practices alleged herein, Defendant has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

87.     Plaintiff Steinlein has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.  Class members have also suffered injury in fact and lost money or property as a result of Defendant's actions as set forth above.

88.     The violation of any law constitutes an "unlawful" business practice under Cal. Bus. & Prof. Code § 17200.

89.     Defendant's false representations alleged herein violate 21 U.S.C. § 343; 21 U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code § 1750 *et seq*.; Cal. Com. Code § 2313; Cal. Com. Code § 2315; and Cal. Bus. & Prof. Code § 17500 *et seq.*

90.     Defendant's false representations alleged herein also violate California's criminal laws.   Cal. Penal Code § 383 (forbidding the offering for sale food that is adulterated, e.g., "by any means it is made to appear better or of greater value than it really is").

91.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of (i) the CLRA, and (ii) the FAL.

92.     Defendant's false representations also violate California's Sherman Food, Drug, and Cosmetic Law, which prohibits the advertising, manufacture, sale of adulterated and misbranded foods.  Cal. Health & Safety Code §§ 110390, 110395, 110398, 110400, 110550, 110585, 110620, 110625, 110660, 110705, 110740, 110760, 110765, and 110770.

93.     In relevant part, the Sherman Law declares that food is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any food.  California Health & Safety Code §§ 110660 and 110765.

94.     The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing."  Cal. Health & Safety Code § 109995.   The named defendant is a "person" within the meaning of the Sherman Law.

{00271331 }

95.     As more fully described herein, Defendant's misleading marketing, advertising, packaging, and labeling of the "Organic" Infant Formula is likely to deceive a reasonable consumer.   Indeed, Plaintiff Steinlein and the other California Sub-Class members were unquestionably deceived regarding the characteristics of Defendant's product, as Defendant's marketing, advertising, packaging, and labeling of the "Organic" Infant Formula misrepresents and/or omits the true nature, quality, and/or ingredients of the "Organic" Infant Formula.

96.     There is no benefit to consumers or competition from deceptively marketing and labeling products.  Indeed, the harm to consumers and competition is substantial.  Plaintiffs and the other members of the California Sub-Class who purchased the "Organic" Infant Formula suffered a substantial injury as alleged herein.

97.     Plaintiff Steinlein and the other members of the California Sub-Class who purchased the "Organic" Infant Formula had no way of reasonably knowing that the "Organic" Infant Formula they purchased was not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

98.     Defendant's acts and omissions alleged above constitute unfair business practices under Cal. Bus. & Prof. Code § 17200 because the gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the California Sub-Class.  Defendant's false and misleading representations and omissions also violate legislatively declared policy as they have violated numerous state and federal laws.  Moreover, the gravity of the harm to Plaintiffs and

Class members resulting from Defendant's conduct outweighs Defendant's legitimate reasons, justifications and/or motives for engaging in such deceptive acts and practices.

99.     Each false and misleading representation and omission constitutes fraudulent business practices under Cal. Bus. & Prof. Code § 17200 because the representations and omissions were false.  Even if these representations were true, Defendant's representations and deceptive concealment were nonetheless fraudulent under the statute because they were misleading and were likely to and did deceive the reasonable consumer, including Plaintiffs and the Class members.

100.    Defendant's violations of the UCL continue to this day.

101.    Pursuant to California Business and Professions Code § 17203, Plaintiffs and the other members of the California Sub-Class seek an order of this Court that includes but is not limited to an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for Defendant's "Organic" Infant Formula as a result of the wrongful conduct of Defendant.

102.    THEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CLAIM

**(False Advertising: Cal. Bus. & Prof. Code § 17500, *et seq*.,)**

**Brought on Behalf of the California Sub-Class**

103.    Plaintiffs incorporate by reference the allegations set forth above.

104.    Plaintiff Steinlein bring this cause of action pursuant to California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

{00271331 }

105.     Such acts of Defendant, are described above, and each of them constitute
unlawful, deceptive, and fraudulent business acts and practices.

106.     At all material times, Defendant engaged in and disseminated advertising,
including product package labels, television advertisements, magazine advertisements, internet
advertisements, and other marketing in the State of California to the public and offered for sale
Abbott's "Organic" Infant Formula on a nationwide basis, including in California.

107.     The misrepresentations and non-disclosures by Defendant of the material facts
detailed above constitute false and misleading advertising, and therefore constitute a violation of
Cal. Bus. & Prof. Code § 17500, *et seq*.

108.     Said advertisements and inducements were made within the State of California
and come within the definition of advertising contained in the FAL in that such promotional
materials were intended as inducements to purchase Defendant's products and are statements
disseminated by Defendant to Plaintiff and the other California Sub-Class members.  Defendant
knew, or in the exercise of reasonable care, should have known, that these representations were
misleading and deceptive.

109.     Consumers, including Plaintiff Steinlein and the other California Sub-Class
members, were among the intended targets of such representations.  Consumers, including
Plaintiff Steinlein and the other California Sub-Class members, necessarily and reasonably relied
on these materials concerning Defendant's "Organic" Infant Formula.

110.     The above acts of Defendant did, and were likely to, deceive reasonable
consumers, including Plaintiffs and the other members of the California Sub-Class, by
obfuscating the nature, quality, and/or ingredients of the "Organic" Infant Formula, in violation
of the "misleading" prong of the FAL.

111.    The business practices alleged above are unlawful under the CLRA, which forbids misleading and deceptive advertising.

112.    Plaintiff Steinlein and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of the FAL.

113.    As a result, Defendant has been unjustly enriched at the expense of Plaintiffs and the other members of the California Sub-Class.  Plaintiffs and the California Sub-Class, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for its "Organic" Infant Formula as a result of the wrongful conduct of Defendant.

114.    THEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CLAIM

**(Violation of California's Consumer Legal Remedies Act ("CLRA"),**

**Cal. Civ. Code § 1750 *et seq*.)**

**Brought on Behalf of the California Sub-Class**

115.    Plaintiff incorporates by references the allegations set forth above.

116.    Plaintiff Steinlein bring this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*. and seek to enjoin the unfair, unlawful, and deceptive acts and conduct of the Defendant as more fully described above.

117.    Defendant is a "person" under Cal. Civ. Code § 1761(c).   Plaintiff Steinlein and the Class members of are aggrieved "consumers" under Cal. Civ. Code § 1761(d), because they bought the "Organic" Infant Formula for personal, family, or household purposes.

118.    Abbott's "Organic" Infant Formulas are "goods" under Cal. Civ. Code § 1761(a). Plaintiffs' and the Class members' purchases of Abbott's "Organic" Infant Formula are "transactions" under Cal. Civ. Code § 1761(e) and § 1770.

119.    Defendant's false and fraudulent representations and omissions have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or have resulted, in the sale of goods to consumers, including the Plaintiff and the Class members.

120.    Defendant's conduct violates Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that goods . . . have . . . characteristics [or] ingredients . . . which they do not have," and Cal. Civ. Code § 1770(a)(7), which prohibits: "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another," causing injury to Plaintiff and the Class.

121.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

122.    Plaintiff Steinlein served Defendant with notice of its CLRA violations by certified mail, return receipt requested on April 26, 2013.  After thirty days of receiving the notice, Defendant still failed to provide any relief for its CLRA violations.

123.    Plaintiff and the Class members seek punitive damages, preliminary injunctive relief, and permanent injunctive relief against Defendant's unfair and deceptive acts and conduct.

124.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

125.     Plaintiff and the other members of the California Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

126.     The unfair and deceptive acts and practices of the Defendant, as described above, present a serious threat to Plaintiff and the other members of the California Sub-Class.

127.     THEREFORE, Plaintiffs pray for relief as set forth below.

## SIXTH CLAIM

### (Violation of the California Organic Products Act)

### Brought on Behalf of the California Sub-Class

128.     Plaintiffs incorporate by reference the allegations set forth above.

129.     This action is brought pursuant to the California Organic Products Act of 2003 ("COPA"), Cal. Health & Safety Code §§ 110810-110959.

130.     Plaintiff Steinlein is a "person" as that term is defined in COPA, Cal. Health & Safety Code § 111910(a).

131.     Defendant has violated and continue to violate the provisions of COPA, Cal. Health & Safety Code § 110820, as described above.

132.     COPA provides for injunctive relief for any violation of COPA and affords standing to "any person" to enforce such violations.  *See* Cal. Health & Safety Code § 111910(a).

133.     COPA further provides that actions for injunctive relief to remedy violations of COPA are not subject to the same restrictions as other actions for injunctive relief.  Specifically, COPA provides that "the person shall not be required to allege facts necessary to show, or

{00271331 }

tending to show, lack of adequate remedy at law, or to show, or tending to show, irreparable damage or loss, or to show, or tending to show, unique or special individual injury or damages." *Id.*

134.     Thus, Plaintiff is entitled to preliminary and permanent injunctive relief to restrain Defendant's violations of COPA. Cal. Health & Safety Code § 111910(a).

THEREFORE, Plaintiffs pray for relief as set forth below.

## SEVENTH CLAIM

### (Unjust Enrichment)

135.     This cause of action is brought on Plaintiffs' behalf and on behalf of the nationwide Class and the New York and California Sub-Classes, pursuant to New York law for the Class and New York Sub-Class, and pursuant to California law for the California Sub-Class.

136.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the "Organic" Infant Formula, Defendant was enriched at the expense of Plaintiffs and the other members of the Class and Sub-Classes through the payment of the purchase price for Defendant's "Organic" infant Formula.

137.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other members of the Class and the Sub-Classes, in light of the fact that the falsely labeled pproducts purchased by Plaintiffs and the other members of the Class and the Sub-Classes were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the other members of the Class and the Sub-Classes for the monies paid Defendant for such "Organic" Infant Formula.

138.     THEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER

139.    As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiffs and Class members.  Defendant has been unjustly enriched by the profits they have obtained from Plaintiffs and the Class from the purchases of Abbott's "Organic" Infant Formula made by them, and the higher value of an organic food brand.

140.    As a result of the wrongful business practices described above, Plaintiffs and the members of the Class are entitled to an order awarding Plaintiffs and the Class full restitution and restoration of the money wrongfully acquired by Defendant by means of its deceptive misrepresentations and omissions, in an amount to be proven at trial, plus interest and attorneys' fees, injunctive relief, and any other orders and judgments which may be necessary to disgorge Defendant's profits or ill-gotten gains obtained and to restore any person in interest any money paid for Abbott's "Organic" Infant Formula as a result of the wrongful conduct of Defendant.  If no such order is granted, the Class will continue to be harmed by Defendant's deceptive acts and practices, and will be irreparably harmed and/or denied an effective and complete remedy.

141.    The above-described deceptive practices of Defendant present a reasonable likelihood of deception to Plaintiffs and members of the Class in that Defendant has systematically perpetrated and continues to perpetrate such acts or practices upon members of the Class by means of false, misleading, and deceptive misrepresentations and omissions on the packages of Abbott's "Organic" Infant Formula and other advertising and marketing.

142.    Such deceptive conduct is ongoing and continues to this date.  The above-described deceptive practices of Defendant are also likely to be repeated in the future.  The above-described deceptive practices of Defendant constitute a continuing course of conduct of

unfair competition and present a continuing threat to consumers in that Defendant will continue to mislead consumers.

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed nationwide Class, New York Sub-Class, and California Sub-Class, providing such relief as follows:

A.   Certification of the nationwide Class, the New York Sub-Class, and the California Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiffs as representatives of the nationwide Class, the New York Sub-Class, and the California Sub-Class; and appointment of their undersigned counsel as counsel for the nationwide Class, the New York Sub-Class, and the California Sub-Class.

B.   A declaration that Abbott is financially responsible for notifying members of the nationwide Class, New York Sub-Class, and California Sub-Class of the pendency of this suit;

C.   An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D.   Restitution, disgorgement, refund, and/or other monetary damages, together with costs, disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.   Restitution to the California Sub-Class pursuant to California Business and Professions Code §§ 17203 and 17535;

F.   Disgorgement to the California Sub-Class pursuant to California Business and Professions Code §§ 17203 and 17535;

{00271331 }

G.  Damages, together with costs and disbursements, including reasonable attorneys' fees, pursuant to the applicable statutes;

H.  Injunctive relief on behalf of the nationwide Class and New York Sub-Class pursuant to New York General Business Code § 349, enjoining Abbott's unlawful and deceptive acts;

I.  Injunctive relief on behalf of the California Sub-Class pursuant to California Health and Safety Code § 111910(a), California Business and Professions Code §§ 17203 and 17535, and California Civil Code § 1780, enjoining Abbott's unlawful and deceptive acts;

J.  Monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the claims alleged;

K.  Statutory damages in the maximum amount provided by law;

L.  Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

M.  An award to Plaintiffs and the nationwide Class, New York Sub-Class, and California Sub-Class members of the reasonable costs and expenses of the lawsuit, including their attorneys' fees;

N.  An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Abbott as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein; and

O.  Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs and the Class members hereby demand a trial by jury.

{00271331 }

FIRST AMENDED CLASS ACTION COMPLAINT
37

Dated: July 30, 2015

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

*/s/ Todd S. Garber*
Todd S. Garber
*tgarber@fbfglaw.com*
D. Gregory Blankinship
*gblankinship@fbfglaw.com*
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
Telephone: (914) 298-3283
Facsimile: (914) 824-1561

**THE GOLAN FIRM**
Yvette Golan (*pro hac vice* forthcoming)
*ygolan@tgfirm.com*
1919 Decatur St.
Houston, TX 77007
Telephone: (866) 298-4150
Facsimile: (928) 441-8250

**THE RICHMAN LAW GROUP**
Kim E. Richman
*krichman@richmanlawgroup.com*
195 Plymouth Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292